FILED
FEB 23 2024
JUDGE ELAINE E. BUCKLO
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 19 CR 28-1 |
|---|---|
| v. | Judge Elaine E. Bucklo |
| DONALD E. MUDD | |

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant DONALD E. MUDD, and his attorney, SHELDON ZENNER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341 (Count 2) and wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 1 and 3-7).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Two, which charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than in or around 2009, and continuing through in or around March 2014, in the Northern District of Illinois, Eastern Division, and elsewhere, DONALD E. MUDD, together with Rodney Hawkins, devised, intended to devise, and participated in a scheme to defraud the Victim Company by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and used the mail in furtherance of that scheme, in violation of Title 18, United States Code, Section 1341.

Specifically, MUDD was the President of Mudd-Lyman Sales and Services Corporation ("Mudd-Lyman") and was the Manager of Simply Service LLC ("SSI"), both of which were located in Skokie, Illinois. Mudd-Lyman and SSI were third-party vendors for Victim Company, a sealants manufacturer located in New York that sold sealants to a large commercial retailer with multiple stores ("Big Box Store A").

Mudd-Lyman and SSI managed Victim Company's products sold in Big Box Store A's stores in the Northeast region of the United States.

Rodney Hawkins held a variety of leadership positions at Victim Company, including Vice President.

### *Victim Company Paid Fraudulently Inflated Commissions*

Mudd-Lyman and SSI provided services for Victim Company at some, but not all, of Big Box Store A's stores in the Northeast part of the United States, and was paid a commission based on the sales of Victim Company's products at those stores. However, Big Box Store A was only able to provide sales data for such products based on the whole Northeast region, and not just the stores serviced by Mudd-Lyman and SSI. Therefore, Victim Company agreed to pay Mudd-Lyman and SSI a reduced commission based on approximately 75% of all Big Box Store A sales of Victim Company products in the region.

Both MUDD and Hawkins were aware that Mudd-Lyman and SSI were only able to receive these reduced commissions related to Big Box Store A sales. However, beginning in approximately 2009, MUDD and Hawkins caused Victim Company to pay a monthly commission based on 100% of all Big Box Store A sales of Victim Company's products in the Northeast region, agreeing to split the extra commissions payments approximately 50/50.

*Victim Company Paid Mudd-Lyman and SSI Based on False Invoices*

In addition to the inflated commissions, MUDD and Hawkins also agreed to submit false invoices from MUDD's companies to Victim Company for services that were never performed. Hawkins dictated to MUDD the wording for the false invoices, and MUDD generated the invoices and typically sent them to Hawkins's personal email address. MUDD knew that no services had been rendered to the Victim Company, and the invoices were false. Hawkins caused the false invoices to be approved for payment by Victim Company. Victim Company then directed Processor A, a third-party payment processor located in Memphis, Tennessee, to issue payments based on the invoices. After receipt of the funds from the false invoices, MUDD and Hawkins then split the proceeds.

As an example, one of the false invoices that MUDD provided to Hawkins, who in turn provided it to Victim Company, caused Victim Company to mail a $35,400 check to SSI in Skokie, Illinois, on or about December 23, 2013. As charged in Count Two, on or about December 23, 2013, MUDD knowingly caused a package containing that check to be sent by the United States Postal Service, according to the directions thereon, from Processor A in Memphis, Tennessee, to Simply Service LLC, in Skokie, Illinois. The check reflected a payment of Simply Service LLC invoice number 13-00, which MUDD knew was false.

*Distribution of Scheme Proceeds from MUDD to Hawkins*

After MUDD fraudulently received funds from Victim Company, payable to one of his entities, MUDD provided the funds to Hawkins in a variety of ways.

First, Hawkins created false invoices from entities which he owned and/or his wife owned, including Tarheel Capital Services, LLC. The invoices falsely represented that those entities provided goods and/or services to one of MUDD's entities. The invoices were in the amount of Hawkins's share of the fraudulent proceeds. MUDD then caused his entities to pay Hawkins's entity, in the amount of the fictitious invoice.

Secondly, MUDD also provided Hawkins with his share of fraud proceeds in envelopes filled with thousands of dollars in cash, including two envelopes that contained a total of $20,900 in cash. Additionally, MUDD also provided Hawkins with his share of fraud proceeds in a cashier's check, made payable to a construction company, to pay for a new garage at Hawkins's residence.

Third, MUDD agreed to make purchases for Hawkins using MUDD's credit card, in order to provide Hawkins his portion of the fraud proceeds.

*Loss*

MUDD admits that the inflated commission payments and the false invoices submitted to Victim Company by SSI and Mudd-Lyman caused a loss to Victim Company of at least approximately $951,755.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

   b. Defendant further understands that the Court must order restitution to the victim of the offense in an amount determined by the Court.

   c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate

deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2023 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1), because the offense of conviction has a statutory maximum term of imprisonment of 20 years or more.

ii. The offense level is increased by 14 levels because the loss amount is approximately $951,755, which is greater than $550,000 but less than $1.5 million, pursuant to Guideline § 2B1.1(b)(1)(H).

iii. The offense level is increased by 2 levels because the defendant intentionally engaged in or caused conduct constituting sophisticated means, pursuant to Guideline § 2B1.1(b)(10)(C).

iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

vi. Pursuant to Guideline § 4C1.1(a), the offense level determined under Chapters Two and Three of the Guidelines Manual is decreased by 2 levels, because the defendant did not receive any criminal history points from

Chapter Four, Part A of the Guidelines Manual and the defendant is not otherwise disqualified by the other provisions enumerated under § 4C1.1(a).

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 18, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 27 to 33 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant acknowledges that the total amount of restitution owed to the victim is $951,755, minus any credit for funds repaid prior to

sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees that funds in the amount of $20,900 that he provided to Hawkins, and which Hawkins submitted to the FBI on or about March 11, 2014, and which has been held in evidence by the FBI since that date, shall be submitted by the FBI to the Clerk of Court for the Northern District of Illinois to be applied to his and Hawkins's expected restitution judgments. Defendant agrees he is not the owner of these funds, that no third-party has a claim to these funds, that they are not exempt from garnishment under Title 18, United States Code, Section 3613, and that the funds are subject to his and Hawkins's expected criminal restitution lien.

16. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code,

Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

18. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment, as well as the forfeiture allegation as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

19. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 19 CR 28-1.

20. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

21. Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant or defendant's partnership or corporations.

12

## Waiver of Rights

22. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

   a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

   i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

   ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.

The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b.  **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed.

Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

23. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## **Presentence Investigation Report/Post-Sentence Supervision**

24. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of

justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

29. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 2/23/24

Signed by Sarah Streicker on behalf of
MORRIS PASQUAL
Acting United States Attorney

DONALD E. MUDD
Defendant

MICHELLE PETERSEN
Assistant U.S. Attorney

SHELDON ZENNER
Attorney for Defendant